If it pleases the Court, my name is Joe Whitcomb and I represent E&I Global and E&C Global Energy Services. There are, as I'm sure the Court is aware, several issues that the appellants take up with the District Court's decision and it is hard, realistically, to prioritize them, but I'll start with the jury issue. And, of course, the issues are fully briefed from both sides, but there's not a lot of obvious law on the specific set of facts that are advanced in this case because of the unusual time in history in which all of this went down. So, the Court is aware. Well, how would you distinguish Littlefield? I'm sorry? How would you distinguish Littlefield on the jury issue? Your Honor, the primary distinction on the jury issue is the time. One, there's a quasi-estoppel here. So, in this instance, the parties... All right. You jumped to quasi-estoppel and that was one of my questions. Is the appellee's counsel right that it was not raised until appeal? No, Your Honor. That's not right. We raised that at the trial court. Okay. Give me a site to the record where it was raised to the District Court. So, Your Honor... I don't think it was discussed by the District Court. What's that again, Your Honor? I don't think it was referenced by the District Court. So, it was raised in the... First, it was raised when the appellees first moved to strike the jury, which was done for the first time in December of 2021. The trial court issued the trial court, the pre-trial court order in September of 2021. And two months later, the appellees filed a motion to strike that order. You are jumping around and I... Forgive me, Your Honor. I am trying to respond. Well, I started by asking you to distinguish Littlefield, which the opposing brief says is controlling. And I have read and it certainly gives you a pretty good-sized rock to push up the hill. And your answer jumps to this estoppel point. I apologize. You haven't answered the Littlefield question. And so, I'm trying to go where you're going. Your Honor, I don't believe Littlefield involved facts that turned around COVID. I don't believe... That turned around the COVID pandemic. I don't think Littlefield dealt with the circumstances in which we had the parties both agreeing and submitting to the court. Okay. So, you accept the law in Littlefield and argue there's distinct factual distinction. That's right. All right. The law in Littlefield is fine. It's because it is so factually distinct. But what was unique about COVID that would change the application of Littlefield? Well, Your Honor, the primary difference in Littlefield in this case is one, that the parties caught the error at the very beginning. And that's not what happened in Littlefield. I can't... I didn't hear those words. You've got to speak more distinctly.  In Littlefield, the parties did not catch the error at the very beginning of the case. That did happen here. In Littlefield, the parties did not submit to the court in a joint motion that there was an error. That happened in our case. The parties not only submitted a joint document admitting that there was an inadvertent error on the part of the plaintiffs, but submitted to the court that it was going to correct that error. And it did so in docket number 18, which was filed in May of 2020, which the court will remember was the exact time in history, and that's why I'm talking about the distinct issue in history here, where the entire world was coming to an unprecedented stop in anyone's lifetime present in this court today. There was... Everyone in our office, and I think most offices across America, were at that time working from home. We were unable, as a firm, my firm was unable to, in this instance, which I believe is also distinct from Littlefield, from even filing the motion because of the ECF restrictions in the South Dakota court. We were reliant on local counsel to be able to file that document. And so, again, and I raise this in our briefing, it's very easy to point back now, four years later, with a sort of quintessential Monday morning quarterbacking that the plaintiff's counsel could have done something better in that instance. We know that we made an error. We only... What we're trying to acknowledge, what we're trying to get the court to acknowledge and the trial court to acknowledge is that the error was excusable because of the facts and circumstances that were going on at the time. And appellees point out, and the court points out, well, you did other things right at the same time. Of course we did. We're not here suggesting that we did everything during that time incorrectly. We're saying it makes perfect sense for something as small as an agreed-upon motion that everyone... So you waited until the end of a four-day trial and the publication of unfavorable findings and conclusions after that trial to, for the first time, file something that was a motion asking for a jury trial. That is inaccurate, Your Honor. So in docket number 75... I'm paraphrasing what the district court wrote. Yes, Your Honor, but that's inaccurate. That's what I'm saying. Your whole brief is just attacking the district court for inaccuracies. Well, yes, Your Honor, that's one of the reasons we're here is that we believe that the district court's decision was rife with inaccuracies. And one of those inaccuracies was to suggest that we didn't raise the issue earlier. When the appellees filed their motion to strike, we waited in immediately raising the issue of... I mean, the same day we filed a motion in response. Where are we in relation to the trial now? In December of 2021. Sorry, December of 2022. When the appellees' counsel called me in the afternoon and said, oh, by the way, we're going to move to strike the jury, and two hours later filed the motion to amend the scheduling order and to strike the jury in the same day we filed the motion in response to that. Strike the jury? You mean strike the jury demand in the complaint? No, Your Honor. In September 2022, the trial court issued a trial court order, a trial order scheduling the trial for February of 2023 with a jury. The trial court issued that order in September of 2022. Two months later, on the same date that the filings were submitted, I think the filing numbers, I think it's ECF 74, 75, the appellees' counsel called me or emailed me in the afternoon and said, hey, we have something to discuss. Two in the afternoon we met and appellees' counsel then announced, hey, I'm going to file a motion to amend the scheduling order and to get the court to correct the scheduling order and remove the jury because you never moved for a jury. Then I went hurriedly through the record, found the exchanges that we had done back in April and May of 2020 and sent those over to Ms. Lee and said, hey, we discussed this. We had agreed on this. But you never filed the motion. We had not filed the motion and that's the point where we get to. The reason that we didn't, we had put the motion together. We had circulated the motion. Everyone was in agreement on the motion. Is that in the record on appeal? Yes, Your Honor. All right. What's the citation? How do I find it? There are e-mails throughout the record, Your Honor, and if I can't find them right now, I will present them to the court in rebuttal. But we do submit a copy of the drafted motion. It's highlighted. It's never submitted to the court. We concede that. But it's circulated amongst the counsel back in May of 2020. And then, of course, because of all of the . . . May of 20? Yes, Your Honor. I thought we were up in December of 22. That's the point, Your Honor, is that in May of 2020, all of the parties were in agreement and passed around a draft of the motion and agreed on the draft of the motion. It was an unopposed motion, one page, that the plaintiffs had inadvertently left the jury demand out. The defendants didn't, in that case, the defendants didn't fight us on that. And we circulated the motion, and that's in the record, and I'll find it when I come back up for rebuttal. It is cited in our briefings, by the way. And just said, look, this is . . . the draft was agreed on. Our South Dakota counsel was the only individual who had the ability to actually file it. Everyone was working from home. And it's simply that document, that stipulated document, simply fell through the cracks and didn't get filed. And all, as is briefed . . . In May of 2020, it couldn't file anything? In May of 2020, our office was never able to file anything because we were reliant on local counsel. When did the COVID order come down? I don't think in May. No, Your Honor. It has nothing to do with the COVID order. It's an ECF limitation. So our office, Whitcomb-Solinsky PC, the plaintiff's primary . . . Your clients are responsible for their attorneys. I don't care whether it's . . . you know, this is a nothing. This . . . now we'll blame it. We'll blame it. We can blame it on local counsel and that makes our . . . the entire exercise excusable. Absolutely. Your Honor, what makes the exercise, the inadvertent error, excusable was the fact that of the unprecedented time in May of 2020, this document simply . . . everyone . . . It just lost . . .  COVID wasn't . . . well, it was in the air, so to speak. But you're talking about an ECF filing limitation that was an extraordinary, unique situation in May of 2020? I doubt that. I suspect it was part of the court's . . . Your Honor, we're not arguing good cause here, as in something that is completely . . . Good cause is a standard where we would be charged with advancing something completely out of our control. We're . . . appellants are not advancing that. Appellants are advancing the idea of excusable neglect. And as Pioneer says in the Supreme Court, and think here . . . But I don't understand why noncompliance with ECF filing limitations is somehow excusable. The pandemic has nothing to do with that. Your Honor, the pandemic just . . . The pandemic simply contributed to the inadvertent error of failing to file it. That's all . . . There were a flurry of motions at the time. We had circulated the motion. Everyone was in agreement with the motion. And as we advanced our brief . . . What was inexcusable about local counsel not filing it in May of 2020? I think Your Honor means to ask what was excusable about that. It was excusable because it was just an issue of human error at the time that gave . . . that was a function . . . And what a circuit case says, oh, if it's just human error, it's excusable. That's the whole point of Pioneer. Pardon? That is the entire point of Pioneer, the Supreme Court precedent, that says first that for there to be excusable neglect, there must first be neglect. And then it was picked up with Fink in the Eighth Circuit, and Fink went as far as to say that every other case that we've ever said requires something more is of no effect anymore. So the Fink court adopted the Pioneer . . . There was neglect. That's exactly the point, Your Honor. Okay. That for there to be excusable . . . What makes that neglect excusable in May of 2020? And, Your Honor, as we've briefed in what I'm advancing now, is what made it excusable then was the chaos going on at the time. What chaos in May of 2020? Where is this in the record? The chaos of May of 2020, Your Honor, I would ask the court to take judicial notice of the fact that the entire country at the time was . . . We were in a state . . . We were in a work-at-home order in Colorado. Not in May. Your Honor, absolutely. May 16, March . . . Where can I find your proof of this in the record? Your Honor, Your Honor could probably look back to the orders issued by this court as to when this court shut its doors, and as also . . . We didn't shut our doors. Yeah. You're just talking nonsense. I'm sorry, Your Honor. The South Dakota court, as it's advanced in our pleas, didn't hold any oral arguments, didn't hold any hearings at all during that time. There were no hearings held at all. Everything was done via paper, via e-mail. That's irrelevant, absolutely irrelevant, as to whether your local council could have filed some kind of a motion or a paper saying we're requesting a jury trial. We are conceding that the local council could have done that. We're not suggesting that there was any . . . Okay, then the question is what makes that excusable? And you go back to the world was falling apart. Because it was two months into the pandemic, Your Honor. It wasn't two months into it. It was maybe four weeks after the first word leaked out of China. March 16th, 2020, Your Honor, is when Governor Polis issued a stay-at-home work order in Colorado telling everyone that they had to stay home. May 8th was the day that one-fourth of . . . Where is the evidence that your local council couldn't have filed that motion? Your Honor, we, again, are not advancing that idea. We are not . . . Appellants are not advancing that there was some constructive or actual block to the filing. We're simply not. We're suggesting . . . All right, let's move on. In fact, you're not going to get to any other issue as it's . . . I'm out of time now. What other issue did you want to argue? Your Honor, the biggest issue outside of the appeal or outside of the jury is obviously the assignment issue. We have E&I and E&C filing joint complaints, pleadings together. We argue that the appellees waived any argument about assignment because they did not bring up an assignment issue at all until a footnote in a post-trial briefing. At no time during trial did they bring up the assignment issue, no time pre-trial. When Mr. Bruce filed on behalf of his company two different times, in July of 2017 and in February of 2018, at no time did Ms. Banks or anyone else related to Liberty Mutual suggest that, well, Mr. Bruce, you never . . . your one company never assigned the contract to the other company. They never raised . . . I thought that was one of Ms. Banks' preliminary reasons for denying the claim for lack of damages. No. Your Honor, Ms. Banks denied the claim suggesting that the tender agreement relieved Liberty Mutual of any responsibility, which ignores, of course, the completion agreement. The completion agreement had an exclusion. It says that the price will be $5.6 million with the exception of these enumerated things, which included things ordered and not paid for by ISLUX, the predecessor contractor. At no point . . . In fact, she responds in her denial letter, as you are well aware, and I quote this more than once in our briefings, as you are well aware, Liberty Mutual tendered E&I to the government. She writes this twice, in Plaintiffs' Exhibit 82 and in Plaintiffs' Exhibit 78. All right. Time's up. Thank you, Your Honor. Ms. Lee. Good morning. May it please the Court, my name is Melissa Lee, and I represent Liberty Mutual Insurance Company. This appeal is about responsibility, more specifically who bears responsibility for the plaintiff's consistent, repeated failure to follow the rules and to meet deadlines for a period of three years. The plaintiff is the offending party, or Liberty is the recipient of this villatory conduct. The district court, who was in the best position to weigh these issues, did not abuse its discretion in finding that the plaintiffs, not Liberty, are responsible for failing to timely demand a jury trial and for failing to timely produce an expert report. Similarly, who bears responsibility for ensuring that the plaintiffs prepared their case for trial by understanding and presenting evidence to demonstrate each element of their claims? The plaintiff who has the burden of proof, or Liberty, the defending party? Here, the plaintiffs simply lost their case at trial. While it's tough to lose, the loss did not come because of any clear error by the district court. Rather, the plaintiffs lost their case because they failed to meet their burden of proof on any of their claims at trial. There are four issues that were raised on the appeal. Opposing counsel addressed two of those issues. I will address the two issues that he addressed in turn, and if there's time left over, I will address the other two issues. Then you'll open them up. Well, that's fair, Your Honor. Well, that's more than fair. It's the way we operate. That's a fair point, yes, or a correct point. So the first issue is the plaintiff failed to timely demand or move for a jury under the rules for a period of nearly three years. They are now asking this court for a second trial after the first trial has already been conducted before a jury because of their failure to follow the rules is purportedly an excusable neglect. The only, first off, it's questionable whether or not this excusable neglect standard applies. The two cases that have been cited do not appear to stand for the proposition that excusable neglect applies in the instance of failing to demand a jury. The Pioneer case dealt with a proof of claim that was untimely filed in a bankruptcy case, and the Fink case addressed a misaddressed envelope under the federal rules of appellate procedure 4A-5. Requiring parties in their counsel to follow the rules is not an abuse of discretion. Given the record before the court, which shows repeated blatant and prejudicial failures to comply with the rules, the COVID-19 pandemic, which is really the only reason often Did the district court make a prejudice finding in concluding that, in refusing to grant the jury? Prejudicial finding as to In the decision that's being appealed. As to liberty or as to As to Was it prejudicial to liberty? Yes. Was there, did the court conclude that there was no showing of prejudice in terms of the request for a trial by jury? The court says, look, you're too late. You're out. And there's, you haven't shown that you've been prejudiced by not getting a jury. This thing goes to trial. It's tried. I mean, what do we have here to indicate that there's some injustice or that there's been a showing of prejudice in the denial of their request for a jury trial? Your Honor, I don't believe that prior to the Well, the prejudice is obvious. They lost. Well, I don't know that They lost the bench trial. I mean, at the time of the denial of the motion that's on appeal. I don't know that that alone is simply prejudicial. They lost not because they didn't have No, it's almost facetious. But I don't know that there's any other showing. Right. There's no demonstration. I guess your question about whether or not the district The court discussed prejudice to you had it granted the motion. Well, I don't think there was an actual motion that said we would be prejudiced. I'm talking about the motion to reconsider after the trial. The motion to reconsider after the trial. That's yes. So that would be after the trial. But we're reviewing. Right. Correct. Yes. I mean, I guess to the point of prejudice there, there, there, there has been no demonstration of prejudice on the part of the plaintiffs. So them and the district court discussed prejudice to you. Correct. That's my recollection without going through it this morning. Yes. Correct, Your Honor. And I think the I mean, there was a bare assertion by plaintiffs. I believe it has been made simply on appeal that had they had to prepare jury instructions that would have clued them in as to an element of their claim that they needed to prove. And therefore, they've been prejudiced by that failure. That is not the type of prejudice that we are talking about here. That is simply as a counsel for your client, making sure that you prepare your case. That's an obligation on your part. That has nothing to do with whether or not a jury tried the case. How long was the court's scheduling order in place that called for a jury trial before you moved to strike the jury? The jury entered a docket entry, I believe in September of 22. And I believe entered a scheduling order shortly after or maybe a little bit after in October of 22. We moved to amend the pleading to correct the error in December of 22. And we would submit that, Your Honors, that, you know, it was simply correcting an error on the part of the court, which the court agreed that it was in fact an error and a jury should not have been put. It should not have been a jury trial because so it wasn't as opposing counsel phrases that we moved to strike a jury. There was never a jury. So we could not move to strike something that never actually existed. There was never a jury trial. It was an error on the part of the court. So we were not, we would submit we were not untimely in moving for anything and simply noting the court that there was an error in making that, in submitting that order. It was an error because it was never demanded initially. Correct. And there was never a motion to either amend the complaint or simply get the court to order that a jury trial was in order, appropriate. Correct, Your Honor. And I think that the record is full of the delays in this instance. It isn't simply that, you know, there was one time where something happened and the COVID-19 pandemic prevented counsel from filing something. The plaintiffs didn't demand a jury in their original complaint. That was filed in February or perhaps maybe January of 2020. So certainly well before the pandemic. And despite realizing this error, as counsel has said and has the party as admitted in their briefing, they never filed a Rule 39B motion for two and a half years, despite this being something that counsel seems to represent, that you all had discussions about the jury trial and that there was some at least consent or at least acknowledgement of an unusual process and that everybody was okay with how things were going, but it just never got requested. Is that accurate? That is accurate to some extent. This occurred in conjunction with an initial scheduling conference where the parties were putting together a case management order for the court. There was a discussion about, well, it does not appear that you demanded a jury in your original pleading. And they said, well, if we, you know, if we were to request a jury trial, would there be any objection to that? And there was a discussion about, yes, if you filed a Rule 39B motion, we will not oppose it. That occurred in May of 2020, that discussion. There was never a motion that was filed. And I think it is simply unreasonable to expect that two years later, when they still have not filed that motion, the consent that Liberty provided back in May of 2020 is still operable. I mean, given their repeated, I mean, they filed a proposed First Amendment complaint that did not request a jury trial. They filed an actual Second Amendment complaint that did not demand a jury trial. Given all of this, I think the only conclusion that Liberty could draw was that the plaintiffs did not intend to demand a jury and had no intention of filing a Rule 39B motion. Well, then, when after that was this pretrial conference where the district court says basically the plaintiffs counsel blamed me for all this? The pretrial conference occurred in January of 2023. So that would have been, I mean, we would have had the conversations in May of 2020 in conjunction with entering a scheduling order. And then the pretrial conference would have occurred, I believe, in January of 2023. And then there was no motion file at that time. It was just complaining. That is correct, Your Honor. And then the first day of trial, it was complained about again, but no motion was made. That is correct, Your Honor. And at that point in time, the parties had appeared for trial and were ready to go and to have a bench trial before Judge Schreier. Just to briefly note a couple of other issues in relation to the jury issue. Demanding a jury is not a complex thing to do on the part of counsel. It is something that can be done by simply filing a short motion if it is not already demanded in your pleading. To put it in your pleading, however, it's a sentence. It's something that COVID-19 would not impact the ability to do. And I think the record also shows that during this period of time, there was numerous litigation. The parties were engaging in motion practice. They were, we were conducting discovery. It wasn't simply that we weren't litigating the case for a period of time. We were. This is, and to demand a jury would have been something that would have been, certainly the plaintiffs would have been capable of doing despite COVID-19. On the second issue of the, that, that counsel brought up, the trial court ruled that E&I failed to demonstrate that it could pursue E&C's breach of contract claim. The kind of the post-trial focus of this has been on whether or not E&C assigned its rights under the completion agreement to E&I. Just to point out a couple of things here. First, the plaintiff had the opportunity to demonstrate an assignment but failed to do so. That is their burden. E&I's ability to recover on E&C's claim is an issue that the plaintiff simply overlooked in preparing their case. If they had simply looked at our answer to their, to their last pleading, we put them on notice of these issues. They are listed as affirmative defenses. The second, the plaintiffs mistake this assumption of an obligation for an assignment of a right by, by what we call kind of a patchwork of documents to try to show that there was an, in fact, an assignment. When what, what they're pointing to is that E&I was the party that ended up contracting, contracting with WAPA to complete the project, that is not an assignment of a right. That, that follow-on contract is not a contract, an assignment that involves E&C Global as the party that should have been the completion contractor under the agreement. Does the follow-on contract incorporate the completion agreement? I believe the follow-on contract incorporates the tender agreement. And the tender agreement was the document by which the completion agreement was tendered to WAPA to complete the project. So, you know, it doesn't, and the tender agreement identifies E&C as the completion contractor. And that document in and of itself would also not convey an assignment of a right from E&C to E&I. One thing the plaintiffs continue to ignore is that the completion agreement, the anti-assignment or consent to assignment provision required the consent by all parties. That includes the insurance company of the state of Pennsylvania. That was the co-surety to Liberty. So there were two sureties that were involved in the initial bonding of Isilux, the original contractor. So that other surety, that consent would have had to been obtained as well. And there's been no demonstration by the plaintiffs that while they patched together an argument in relation to Liberty, this is completely ignored by the plaintiffs that there was in fact another party whose consent would have had to be obtained as well. Your Honors, I believe that is all that I have unless you have any further questions for me. Thank you, Your Honor. I'll give you a minute for rebuttal. Thank you, Your Honor. Appendix 1063 and 1074 are the references in the record where the parties agreed back in May of 2020 as to the jury trial. Appellee's counsel just misspoke as it relates to one issue and that was whether or not ISOP, which was the Pennsylvania surety, agreed. If the court looks at Plaintiff's Exhibit 78, Ms. Banks writes to Mr. Bruce, who is the owner of both E&I and E&C, and purports to write on behalf of both parties. She writes on behalf of both E&I and E&C. I'm sorry, I misspoke. She writes on behalf of Liberty Mutual and the insurance company of Pennsylvania. In that document asserts, as you know, sureties, plural, tendered E&I, one of the plaintiffs in this case, to WAPA. The court went on to explain that that was an inadvertent error and perfectly understandable given the fact that E&I and E&C used their names interchangeably, which also makes sense because Mr. Bruce owned both companies. They were single-member LLCs. Pursuant to any evidence other than Mr. Bruce's testimony in court that E&C was an aspirational company that he was hoping to stand up and then ultimately couldn't find bonding. The court also asked Ms. Lee about the prejudice issue. The court actually, in our view of the world, erroneously ruled that Liberty would be prejudiced by being required to tee up its case for a jury trial if it were made to go forward with a jury trial. As we've advanced in our many papers, the mention of a jury trial happens over 22 times, including in an excerpt from a demand letter that Ms. Lee made in October of 2022 in which she says a jury would never believe what you're advancing. That's a paraphrase. But the idea that it was actually plaintiff's counsel that had to tee up and now prepare for a bench trial when we had been preparing for three years for a jury trial. The rest of the issues are obviously argued in the papers. And we would ask the court to take notice of those arguments. Thank you. Thank you, counsel. Complex case. This argument's been helpful. It's thoroughly brief, and we'll take it under advisement. Does that complete the morning's arguments? Yes, Your Honor. Very good. Then the court will be in recess until 9 o'clock tomorrow morning.